# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMERICAN AUTOMOTIVE SERVICE SOLUTIONS, INC. d/b/a FENIX PROTECT, a Missouri corporation, | |
| Plaintiff, | Case No.: 4:20-cv-01114 |
| v. | **JURY TRIAL DEMANDED** |
| AGRUSS LAW FIRM, LLC, an Illinois limited liability company; | |
| ICEHOOK SYSTEMS, LLC, a New York company; | |
| DISCORD, INC., a Delaware corporation; | |
| JOHN DOE 1 d/b/a SCAMMER.INFO; | |
| CAMERON LOBBAN, a resident of the United Kingdom, individually and owner/operator of SCAMMER.INFO; | |
| RYKER GILLESPIE, a resident of Arizona; | |
| DONALD MARCHANT a resident of South Carolina; | |
| JOHN DOE 2 d/b/a and/or operating BOBRTC.TEL; | |
| JOHN DOES 3-50; | |
| TUCOWS, a Canadian company, as a nominal defendant; and | |
| CLOUDFLARE, INC., a Delaware corporation, as a nominal defendant; | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT

Plaintiff American Automotive Service Solutions, Inc., d/b/a Fenix Protect ("Fenix") states the following for its Complaint:

## NATURE OF THE ACTION

1. This is a civil action to stop a vast illegal undertaking and computer fraud and abuse aimed at shutting down Fenix's entire business operations through the use of mass telephone dialing of Fenix's phones so real existing and prospective customers can no longer reach Fenix.

2. The unlawful activity was all done under the vigilante guise of punishing scam companies which mass auto-dial consumers on their cell phones. The problem is that not only is vigilante justice illegal, but their entire efforts here are a huge case of mistaken identity since Fenix does not engage in any outbound dialing marketing whatsoever.

3. Defendants (except nominal defendants Tucows and Cloudflare) have all engaged, some together and some separately, in an effort to destroy Fenix's business by doing everything from advertising false claims about Fenix being a scam auto-dialing company to actually providing the systems to mass dial Fenix to the actual illegal mass dialing of Fenix. These separate and often combined efforts resulted in raiding Fenix's phone lines with thousands of calls so that legitimate customers could not reach Fenix and make purchases. They also have precipitated cancellations from existing customers who could not reach Fenix.

4. Most of the Defendants, especially the individuals, John Does and the BobRTC-related Defendants, conduct and coordinate their wrongful attacks at websites, apps and services operated by Icehook, BobRTC.tel, Discord and Scammer. The John Doe Defendants use those accounts to hide their true identities while engaging in their unlawful conduct by flooding

Fenix's phones with thousands of illegitimate phone calls in a coordinated denial of service ("DoS") attack.

5. Fenix is in the business of selling vehicle service contracts (VSCs). Its *sole* method of marketing is through direct mail. It does not outbound dial customers to sell VSCs.

6. This DoS attack all started with Defendant Agruss posting on its law firm website an advertisement telling consumers that if they had been call blasted by certain numbers, which it turns out were Fenix numbers, they could contact the law firm to complain and presumably sue. These ads were false and misleading since Fenix does not outbound autodial.

7. Very shortly after that posting of these advertisements that falsely and misleadingly claimed Fenix was basically auto-dialing consumers, unidentified persons uploaded Fenix phone numbers to a website BobRTC.tel, which provides a system for people and bots all over the world to mass dial Fenix's phone numbers so that their phones would be jammed and no legitimate consumer calls could come in—all while masking their identities.

8. Discord operates a website and application, also used throughout the world, including in Missouri, where users can coordinate their unlawful conduct on message boards offered by Discord.

9. Scammer.info is another website, operated and owned by Cameron Lobban in the United Kingdom, but operating throughout the U.S., where users can also coordinate their unlawful conduct on message boards offered by Scammer.

10. While Plaintiff is still investigating all of the perpetrators of the unlawful conduct, individual Defendants Ryker Gillespie and Donald Marchant are directly involved in the efforts to mass dial Fenix.

11. This unrelenting attack on Fenix's phone system has gone unabated for weeks now, costing Fenix hundreds of thousands of dollars in wasted mail costs, lost business and customer cancellations—all based on the false belief that Fenix auto-dials consumers.

12. This action seeks an injunction against Defendants to end their unlawful campaign against Fenix, as well as damages, which are well into the six figures already and climbing.

13. Fenix brings this action for tortious interference with its business, false advertising under state law and the Lanham Act, 15 U.S.C. § 1125, and violations of the Computer Fraud and Abuse Act 18 U.S.C. § 1030 (CFAA), Missouri Computer Tampering Act Mo. Rev. Stat. §§ 537.525 and 569.096-099 (MCTA), and civil conspiracy under Missouri State Law.

**PARTIES**

14. Plaintiff Fenix is a Missouri corporation with its principal place of business in St. Charles County, Missouri.

15. Defendant Agruss is a limited liability company and law firm located in Chicago, Illinois. It operates a publicly available website and is in the business of representing consumers nationwide in TCPA matters, including in this judicial district. It falsely advertised Fenix's Missouri telephone lines on its website, perpetrated its tortious conduct, and damaged Fenix in this district.

16. Defendant Icehook Systems, Inc. is a Delaware corporation with its principal place of business in New York. Upon information and belief, Icehook either operates, owns or is directly involved with BobRTC and its illegal activity directed to Missouri and injuring Fenix in Missouri.

17. Upon information and belief John Doe 2 is the owner, operator and/or parent company of the person or entity which owns the website BobRTC.tel. BobRTC provides the platform and tools and directly solicits others to mass dial companies it believes are illegally auto-dialing consumers. Sort of a vigilante fight back against illegal auto-dialers.

18. Defendant Discord is a Delaware corporation with its principal place of business in San Francisco. Discord operates its website discord.com and a mobile application, used throughout the world, including in Missouri. Discord provides the message boards and tools for the individual defendants to coordinate their unlawful conduct, all with Discord's knowledge.

19. Defendant Lobban is an individual residing in Leeds, West Yorkshire, United Kingdom and, upon information and belief, is the owner and/or operator of the website scammer.info, another website that helps users engage message boards for the individual defendants to coordinate their unlawful conduct, all with Lobban and scammer.info's knowledge.

20. Defendant Marchant is an individual residing in South Carolina. His tortious and illegal activity on scammer.info (which was then picked up by BobRTC from scammer.info) was directed at harming Fenix in Missouri using Fenix's Missouri telephones.

21. Defendant Gillespie is an individual residing in Arizona. His tortious and illegal activity on BobRTC.tel was directed at harming Fenix in Missouri using Fenix's Missouri telephones.

22. Defendants John Does 3-50 are other entities and/or persons which are involved in the misconduct and violations herein but their identities are not yet known.

23. Nominal Defendant Tucows, Inc. is a Canadian company with its principal place of business in Toronto, Canada. Tucows is being named because it hosts BobRTC.tel and, upon

injunction, can be ordered to cease hosting the website. Tucows does business throughout the U.S. and Missouri and hosts the offending website in question.

24. Nominal Defendant Cloudflare, Inc. is a Delaware Corporation with its principal place of business in San Francisco, CA. Cloudflare is being named because it hosts Discord and, upon injunction, can be ordered to cease hosting the website. Cloudflare does business throughout the U.S. and Missouri and hosts the offending website in question.

## JURISDICTION AND VENUE

25. This action arises under 15 U.S.C. § 1125, 18 U.S.C. § 1030 as well as the statutory and common law of the state of Missouri.

26. In addition, this action is between Plaintiff, a Missouri company, and Defendants (and upon information and belief, for the LLC Defendants, all of their members), all of whom are not citizens of Missouri, and the amount in controversy exceeds $75,000.

27. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

28. This Court has personal jurisdiction over Defendants. Defendants purposefully called, advertised or otherwise flooded Fenix's Missouri-based telephone lines in, and directed their illegal conduct, toward the State of Missouri. Further, Defendants' acts constitute the commission of a tort within the State of Missouri that impacts or affects residents of the State of Missouri.

29. Venue is proper in this District under 28 U.S.C. § 1391 because, *inter alia*, on information and belief, Defendants have advertised, sold and/or marketed products and services to residents in this District, have committed tortious acts within this District, and a substantial part of the events giving rise to these claims occurred and continues to occur in this District.

## FACTS COMMON TO ALL CLAIMS

A.  **FENIX's Business**

30. Fenix is a seller of vehicle service contracts (VSCs) meaning that it markets and sells service contracts to automobile owners for certain mechanical breakdowns.

31. Fenix runs its VSC marketing and sales operations out of locations in Wentzville, Missouri and Addison, Texas. The majority of business is done from Missouri. Importantly, the vast majority of the staff who conduct business on behalf of Fenix are inside sales and customer support professionals who interact with customers and prospective customers entirely over the phone. Indeed, all sales are placed when a customer dials one of a handful of phone numbers dedicated to sales calls and the Fenix internal system routes the call to an available sales professional.

32. Fenix conducts marketing in connection with its VSC sales in only two ways. Primarily, Fenix mails advertisements directly to consumers, and then a lesser method used is its website at [www.fenixprotect.com](www.fenixprotect.com) (the "Fenix Website") where a consumer can request that Fenix provide him or her a quote. Fenix does not autodial or robocall consumers as one of its marketing methods.

B.  **The First Act to Destroy Fenix's Business – How It All Started**

33. Agruss is a law firm based out of Chicago, Illinois that specializes in representing plaintiffs on Telephone Consumer Protection Act (TCPA) cases among other practices. Agruss maintains a website at the URL [www.AgrussLawFirm.com](www.AgrussLawFirm.com) which includes a number of pages advertising their law services and publishing blog entries, videos, guides, and newsletters on various legal topics.

34. Sometime earlier in 2020, Agruss published an advertisement that identified a series of telephone numbers which Agruss alleged were used in illegal autodialing campaigns

(the Agruss Publication). The Agruss Publication directed consumers to call the law firm to complain about any robocalls that they had received. Some of the numbers identified in the Agruss Publication are associated with Fenix's Wentzville, Missouri call center (the "Fenix Telephone Numbers") and are used to route consumers to Fenix's sales and customer support professionals. Contrary to the allegations in the Agruss Publication, however, Plaintiff has never used any of the Fenix Telephone Numbers (or any other telephone number for that matter) to robocall any consumers.

C. **Discord and Scammer.info Further the Spreading of Misinformation that Fenix Auto-Dials Consumers**

35. Scammer.info and Discord provide forums and message boards for users to discuss plans to launch mass dialing attacks on companies they believe are scamming consumers.

36. The individual and John Doe 3-50 Defendants used these platforms to discuss Fenix and plan their coordinated unlawful attack on Fenix's Telephone Numbers.

37. Once these defendants coordinated and planned their attack, they then headed over to BobRTC.tel to implement their illegal scheme.

D. **BobRTC.tel Now Thinks Fenix is a Scamming Auto-Dialer and Solicits Others to Mass Dial Fenix**

38. BobRTC.tel is a web-based platform that allows "scam baiters" to use Voice Over Internet Protocol (VOIP) to "fight telephone fraud" by dialing and locking up phone systems for individuals and entities that BobRTC.tel users unilaterally believe belong to telephone fraudsters. Upon information and belief, Icehook Systems and John Doe No. 2 own and operate BobRTC.tel, and are responsible for the activities described herein.

39. The BobRTC.tel platform includes a function which allows users to load phone numbers of alleged "scammer numbers" into a registry (the "BobRTC.tel Phonebook") that users and bots can then use to manually call from a spoofed telephone number, autodial,

teleconference dial with other "scam baiters," and even record the call. Not only does BobRTC.tel provide a chat function through which users can discuss best practices for fooling telephone scammers, but BobRTC.tel has even turned the scam baiting into a game.

40. Indeed, users can gain "experience points" (XP) through a number of methods including by uploading numbers for alleged telephone fraudsters or based on the number of entries that he or she dials on the BobRTC.tel Phonebook. Users can then trade their XP for features like "call flooding" and voice bots which allow callers to mask their voice with a computer algorithm. The BobRTC.tel platform also has a link to forums or threads on separate websites such as Scammer.info, and Discord.

41. Soon after Agruss published the advertisements described immediately above, and after people began discussing Fenix's numbers on Scammer.info and Discord.com., the individual and John Doe 3-50 Defendants, posted the Fenix Telephone Numbers in the BobRTC.tel Phonebook. Although the stated objective of scam baiting via BobRTC.tel is to keep telephone fraudsters from victimizing innocent consumers, the individual and John Doe 3-50 Defendants have coordinated mass Telephone Denial of Service (TDoS) attacks on Fenix's telephone systems, and have cost an innocent VSC company hundreds of thousands of dollars.

E. **The Individual and John Doe Defendants 3-50 and the TDoS Attacks**

42. Fenix and its representatives have been the victims of TDoS attacks organized by the individual and John Doe 3-50 Defendants. They have inundated Fenix with thousands of calls made or otherwise engineered by these Defendants.

43. The U.S. Department of Homeland Security defines a TDoS attack as one in which perpetrators launch a high volume of telephone calls against a target network, tying up the system from receiving legitimate calls. "The organization will be inundated with a continuous stream of calls from being completed." (See, TDoS Attacks on Public Safety Communications,

Situational Awareness Update, March 16, 2013.) The DHS and other law enforcement agencies recognize TDoS attacks as criminal activity and encourage that victims report them to appropriate authorities.

44. These John Doe Defendants mask their identities to perpetrate their scheme. They use BobRTC.tel to disguise their location and telephone numbers when placing calls. They use technology, including "autodialers," to rapidly place a high volume of calls. And they coordinate their activities using anonymous accounts on web forums operated by Defendants Discord and Scammer.

45. These phone calls and attacks have no purpose other than to harass and otherwise interfere with Fenix's business.

46. The callers, who are sometimes computer-controlled, and other times human, occupy Fenix's phone lines and employees for thousands of hours a month.

47. These calls are not a prank. They are concerted, malicious and a criminal effort to cause harm to Fenix.

48. As a result of the attacks, Fenix's telephone network and employees must answer and respond to a high volume of false calls. Legitimate customers and potential customers are unable to reach company representatives. This has resulted in lost sales and dissatisfied existing customers.

49. Other times, the calls overwhelm Fenix's systems entirely so they cannot be operated, effectively shutting down Fenix's business.

F. **The Attacks Are Coordinated Online**

50. In online forums including Discord and Scammer, a group of John Doe Defendants working in concert have abused the communication forums and chatrooms to coordinate their attacks.

51. In addition to the unlawful telephone hacking, and as described below, the web forums reveal the individual and John Doe 3-50 Defendants making false and damaging statements about Fenix. The individual and John Doe 3-50 Defendants have been engaged in a long and coordinated pattern of abusive behavior towards Fenix through their use of these platforms.

52. By way of example, on Discord, a number of individual and John Doe Defendants started a forum or chatroom identifying the Fenix Telephone Numbers as belonging to a telemarketing or telephone fraud company. The individual and John Doe Defendants connected the Fenix Telephone Numbers to Fenix itself, and the individual and John Doe Defendants in the Discord forums falsely and misleadingly labelled Fenix as a telephone scammer and an unscrupulous telemarketer which engages in autodialing, robocalling, and generally harassing consumers over the telephone.

53. Scam baiters on Scammer.Info had almost identical discussions to those taking place on Discord. Individual and John Doe Defendants on Scammer.info forums and chatrooms also falsely identified Fenix as a telephone scammer and an autodialer. As a result, the Individual and John Doe defendants on Discord and Scammer.Info unilaterally decided to punish Fenix for its purported crimes, and organized a TDoS attack on the Fenix Telephone Numbers identified in the Agruss Publication using the BobRTC.tel's platform. In other words, Discord and Scammer provided a back alley where individual and John Doe 3-50 Defendants congregated and planned their illegal attack on Fenix.

54. Although these vigilante scam baiters falsely accused and singled out a company that is actually innocent of autodialing and robocalling consumers, they are unfortunately adept at carrying out disruptive DOS attacks. Indeed, the individual and John Doe 3-50 Defendants

coordinated their TDoS attacks to coincide at the same moment and have completely shut down Fenix's Telephone System for days. These synchronized efforts to systematically prevent Fenix from receiving any calls from legitimate customers have cost Fenix hundreds of thousands of dollars in a short matter of time.

G. **Nominal Defendants Tucows and Cloudflare**

55. Tucows and Cloudflare host various websites, including BobRTC, Scammer.info and Discord.

56. While Fenix has no information that these defendants have done anything wrong, because Fenix seeks injunctive relief in this case, they are being named as nominal Defendants so that when an injunction is issued to shut down the illegal activity, they will be under the jurisdiction of this court.

57. Both Tucows and Cloudflare operate interactive websites where users can pay for hosting and other services online.

58. Numerous sales of their services have been made in this jurisdiction by both of these defendants.

**COUNT ONE**
**False Advertising**
**(Lanham Act Section 15 U.S.C. § 1125)**
**(Against Agruss)**

59. Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

55. Agruss disseminated advertising materials which are untrue and/or misleading, and falsely describe Fenix's operations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56. Agruss marketed and distributed the Agruss Publication on the Internet, telling consumers that the Fenix Telephone Numbers are used in autodial campaigns that violate the TCPA. Fenix has never engaged in any auto-dialing marketing. It markets by mail.

57. The Agruss Publication contains false statements of fact about the Fenix Telephone Numbers which misrepresents the nature of Fenix's services.

58. Because of Agruss's false statements, consumers have been deceived into thinking that Fenix is an unscrupulous company that autodials consumers or a malefactor that robocalls consumers with the intention of defrauding consumers.

59. Fenix is harmed by Agruss's false statements because they have deceived consumers about the nature of Fenix's services and prompted consumers into avoiding business with Fenix.  Moreover, the false statements in the Agruss Publication were in all likelihood the first motivation that prompted Marchant, Gillespie, and John Does 3-50 to coordinate attacks on Fenix's telephone system.

60. On information and belief, Agruss's acts complained of herein have been committed with reckless disregard for the truth about Fenix's business, and that reckless disregard led to confusion, and mistake, or to deceive the public.

61. Despite Fenix asking Agruss to remove the false statements, it has not removed the false statements from its website and the continued publication will continue to deceive consumers, as well as the individual and John Doe 3-50 Defendants. Unless enjoined, the Agruss Publication will cause irreparable harm to Fenix for which Fenix has no complete and adequate remedy at law. Fenix has also suffered damages for this conduct in an amount yet to be determined.

62.  As a direct and proximate result of Agruss's conduct, Fenix is entitled to damages and a permanent injunction enjoining and restraining Agruss and their respective agents and assigns from engaging in the above mentioned acts.

60. Fenix is entitled to recover Defendants' profits, trebled profits and damages, costs, and reasonable attorneys' fees under the Lanham Act.

## COUNT TWO
### Violation of the Computer Fraud and Abuse Act
### (18 U.S.C. § 1030)
### (Against All Defendants Except Agruss)

61. Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

62. Fenix's telephone system and its phone call routing configuration are based on computers (the "Fenix Computer System") which are involved in interstate commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

63. Marchant, Gillespie and John Does 3-50 knowingly and intentionally accessed the Fenix Computer System without authorization and/or in excess of any actual or implied authorization when they coordinated and engaged in a massive TDoS attack autodialing and locking up the Fenix Telephone Numbers for hours on end.

64. These defendants all perpetrated their unlawful actions with the help, assistance and knowledge of Icehook and all others owning or operating BobRTC.

65. These defendants all perpetrated their unlawful actions with the help, assistance and knowledge of Discord and Scammer.info.

66. Defendants knowingly, willfully, and with an intent to defraud, accessed the Fenix Computer System without authorization and in excess of authorization. These Defendants took these actions for their own benefit and to the detriment of Fenix.

67. Defendants have caused a loss to Fenix far in excess of $5,000.00 during a twelve-month period.

68. Defendants have damaged Fenix in that the TDoS attacks have prevented an indeterminate number of potential consumers from reaching Fenix's sales associates to purchase VSCs, have caused existing customers to cancel their policies with Fenix because they could not get through the TDoS to ask Fenix representatives questions and have forced Fenix to expend additional amounts in IT resources to try and stop the unauthorized access and abuse of the Fenix Computer System. Fenix seeks compensatory and other equitable relief under 18 U.S.C. § 1030 (g) in an amount to be proven at trial.

69. Fenix has suffered significant, irreparable and not fully calculable harm and injuries resulting from the conduct, which harm will continue unless this Court puts a stop to the TDoS attacks and properly enjoins Defendants from further use of BobRTC.tel platform to attack the Fenix Computer System. Fenix has no complete remedy at law.

### COUNT THREE
### Trespass to Chattels
### (All Defendants Except Agruss)
### (Missouri Common Law)

70. Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

71. During all material times alleged herein, the Fenix Computer System included goods or personal chattel belonging to Fenix.

72. Fenix did not authorize anyone to assist with or in any way perform the TDoS attacks.

73. Defendants Marchant, Gillespie and John Does 3-50 intentionally coordinated the TDoS attacks on the Fenix Computer System through various posts on Scammer.Info and Discord.

74. Discord and Scammer knew their platforms were being used to plan such attacks.

75. The TDoS attacks have completely prevented Fenix from using the Fenix Telephone Numbers, and totally interfered with Fenix's use of the Fenix Computer System.

76. All Defendants, except the nominal Defendants, helped perpetrate a trespass, and Marchant, Gillespie and John Does 3-50 actually trespassed, against Fenix's chattels (i.e. the Fenix Computer System) when they unlawfully prevented any current or prospective customers from contacting Plaintiff in connection with the TDoS attack.

77. As a result, and as alleged herein this Complaint, the TDoS attack has damaged Fenix.

78. The actions complained of herein were conscious, intentional, willful, wanton and malicious entitling Plaintiff to an award of punitive damages.

79. Fenix has no adequate remedy of law for the continued trespass to chattels.

80. Fenix is entitled to relief for the violations of Missouri common law regarding trespass to chattels.

81. Plaintiff seeks to recover its attorneys' fees in connection with preliminary and permanent injunctions required to cease such unlawful actions, and actual damages suffered as a result of Defendants' conduct.

## COUNT FOUR
### Tortious Interference with Business Expectancy
### (All Defendants Except Agruss)
### (Missouri Common Law)

82. Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

83. Fenix has existing contracts and/or valid business relationships, and regularly has business expectancies for prospective customers.

84. Defendants all knew of Fenix's contracts or relationships with its customers and its business expectancies.

85. Defendants intentionally interfered with Fenix's contracts, relationships and/or expectancies in a manner which induced a breach of said contracts and/or caused customers to cancel their VSCs with Fenix, and prevented new customers form making purchases from Fenix.

86. Defendants' intentional interference with Fenix's customer contracts, relationships and/or expectancies was unjustified and/or was done in a manner that employed improper means.

87. Defendants' tortious interference with Fenix's contracts, valid business relationships and/or expectancies has caused Fenix to suffer damages in an amount to be determined at trial.

88. Defendants' conduct was willful and malicious and performed with malicious motive and with a reckless indifference to the rights of others entitling Fenix to punitive damages.

## COUNT FIVE
### Violation of the Missouri Computer Tampering Act
### (All Defendants Except Agruss)
### (Mo. Rev. Stat. § 569.095)

89. Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

90. Mo. Rev. Stat. § 537.525 permits a Plaintiff to recover compensatory damages against any person who violates Missouri Revised Statutes §§ 569.095 to 569.099.

91. Missouri Revised Statute § 569.095 states:

> A person commits the crime of tampering with computer data if he knowingly and without authorization  or without reasonable grounds to believe that he has such authorization: modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network…

92. On a daily, hourly, minute-by-minute, and second-by-second basis, all Defendants, knowingly and without authorization or without reasonable grounds to believe that they had authorization, provided the platform and means, and Defendants Gillespie, Marchant and John Does 3-50 in fact engaged in the conduct to, destroy data, programs, and/or supporting documentation on the Fenix Computer System when they completely prevented access to the Fenix Telephone Numbers in violation of Mo. Rev. Stat. § 569.095(3).

93. In addition to any other damages and relief available to it, Fenix is entitled to recover its reasonable attorney's fees incurred herein from Defendants.

94. Fenix has been injured and damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to prevent further TDoS attacks on the Fenix Computer System.

**COUNT SIX**
**Civil Conspiracy**
**(All Defendants Except Agruss)**
**(Missouri Common Law)**

95. Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

96. Defendants conspired with one another with the unlawful objective to: (a) access the Fenix Computer System without authority; (b) prevent prospective customers from

contacting Fenix's sales professionals and purchasing new VSCs; (c) prevent current customers from contacting Fenix's sales and customer support professionals to ask questions; and (d) tortiously interfere with Fenix's contracts and/or business expectancies.

97. Defendants committed numerous overt acts in furtherance of the conspiracy including, but not limited to loading the Fenix Telephone Numbers into the BobRTC.tel program and identifying Fenix as a "scammer" or telemarketer; drafting and publishing posts on Scammer.info and Discord coordinating the TDoS attack; actually carrying out the TDoS attack using the BobRTC.tel platform, as well as other overt acts.

98. As a direct result of the foregoing conduct, Defendants have caused and continue to cause damages to Fenix, including but not limited to attorneys' fees and costs expended that will be expended in the future by Fenix to enforce its legal rights.

99. Defendants' conduct was willful and malicious and performed with malicious motive and with a reckless indifference to the rights of others entitling Fenix to punitive damages.

## CONCLUSION

WHEREFORE, Fenix prays the Court enter judgment in its favor and award it relief as follows:

1. That the Court permanently restrain and enjoin Defendants and their agents from any and all further posting or disseminating of the Fenix Telephone Numbers, uploading the phone numbers into BobRTC.tel or similar systems and from engaging in any dialing of the Fenix Telephone Numbers;

2. That the Court require Defendants to remove all postings or advertisements of the Fenix Telephone Numbers;

3. That the Court permanently restrain and enjoin Defendants and their agents from any other act likely to induce others to dial Fenix who is not a legitimate customer;

4. That Fenix be awarded all damages incurred as a direct and proximate cause of Defendants' unlawful conduct;

5. That Defendants pay Fenix's reasonable attorneys' fees, based on its willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a);

6. That the Court grant Fenix such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Fenix hereby demands a jury trial on all issues so triable.

Dated:  August 20, 2020                    Respectfully Submitted,


By: *s/Jeffrey H. Kass*
Jeffrey H. Kass
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel.:    303-861-7760
Fax:    303-861-7767
Jeffrey.Kass@lewisbrisbois.com

*Attorneys for Plaintiff*