**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| AMERICAN AUTOMOTIVE SERVICE SOLUTIONS, INC. d/b/a FENIX PROTECT, a Missouri corporation, | |
| Plaintiff, | Case No.:  4:20-cv-01114 |
| v. | **JURY TRIAL DEMANDED** |
| AGRUSS LAW FIRM, LLC, an Illinois limited liability company; | |
| ICEHOOK SYSTEMS, LLC, a New York company; | |
| DISCORD, INC., a Delaware corporation; | |
| JOHN DOE 1 d/b/a SCAMMER.INFO; | |
| CAMERON LOBBAN, a resident of the United Kingdom, individually and as owner/operator of SCAMMER.INFO; | |
| RYKER GILLESPIE, a resident of Arizona; | |
| DONALD MARCHANT a resident of South Carolina; | |
| JOHN DOE 2 d/b/a and/or operating BOBRTC.TEL; | |
| JOHN DOES 3-50; and | |
| TUCOWS, a Canadian company, as a nominal defendant; | |
| Defendants. | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff American Automotive Service Solutions, Inc., d/b/a Fenix Protect ("Fenix")

states the following for its First Amended Complaint:

## NATURE OF THE ACTION

1.      This is a civil action to stop a vast illegal undertaking and computer fraud and

abuse aimed at shutting down Fenix's entire business operations through the use of mass

telephone dialing of Fenix's phones so real existing and prospective customers can no longer

reach Fenix.

2.      The unlawful activity was all done under the vigilante guise of punishing scam

companies which mass auto-dial consumers on their cell phones. The problem is that not only is

vigilante justice illegal, but their entire efforts here are a huge case of mistaken identity since

Fenix does not engage in any outbound dialing marketing whatsoever.

3.      Defendants (except nominal defendant Tucows) have all engaged, some together

and some separately, some intentionally and some recklessly, in an effort to destroy Fenix's

business.  These efforts include everything from falsely advertising that Fenix is a scam auto-

dialing company (which it absolutely is not), to providing the technology needed to mass dial

Fenix, to illegally mass dialing the Fenix in-bound telephone system. These separate and often

combined efforts resulted in raiding Fenix's phone lines with thousands of calls so that legitimate

customers could not reach Fenix and transact business with Fenix. They also have precipitated

cancellations from existing customers who could not reach Fenix.

4.      Most of the Defendants, especially the individuals, John Does and the BobRTC-

related Defendants, conduct and coordinate their wrongful attacks at websites, apps and services

operated by Defendants Icehook, BobRTC.tel, Discord and Scammer. The John Doe Defendants

use these websites, apps and services to hide their true identities while engaging in their unlawful

conduct by flooding Fenix's in-bound telephone system with thousands of illegitimate phone calls in a coordinated Telephone Denial of Service ("TDoS") attack.

5.      Fenix is in the business of selling vehicle service contracts ("VSCs").  Its *sole* method of marketing VSCs is through direct mail.  It does not outbound dial customers to sell VSCs.  Instead, customers that receive Fenix's mailings call Fenix.

6.      The DoS attack against Fenix all started around the time that Defendant Agruss posted on its law firm website an advertisement telling consumers that if they had received calls from a certain number, which it turns out was a number for Fenix, they could contact Agruss to complain and presumably sue using Agruss as the consumer's attorney. This advertisement was false and misleading since Fenix does not outbound autodial.

7.      Around the time that Agruss posted this false and misleading advertisement, unidentified John Doe Defendants uploaded the Fenix phone number to a website called BobRTC.tel, which provides a "masking" system for people and bots all over the world to mass dial Fenix's phone number so that Fenix's telephone system would be jammed and no legitimate consumer calls could reach Fenix.

8.      Defendant Discord operates a website and application, also used throughout the world, including in Missouri, where users can coordinate their unlawful conduct on message boards offered by Discord.

9.      Defendant Scammer.info is another website, operated and owned by Cameron Lobban in the United Kingdom, but operating throughout the U.S., where users can also coordinate their unlawful conduct on message boards offered by Scammer.info.

10.    While Fenix is still investigating all of the perpetrators of the unlawful conduct, individual Defendants Ryker Gillespie and Donald Marchant are directly involved in the continuing efforts to mass dial Fenix.

11.    This unrelenting attack on Fenix's phone system has gone unabated for weeks now, costing Fenix hundreds of thousands of dollars in wasted mail costs, lost business and customer cancellations—all based on the false belief that Fenix auto-dials consumers.

12.    This action seeks an injunction against Defendants to end their unlawful campaign against Fenix, as well as damages, which are well into the six figures and climbing daily.

13.    Fenix brings this action for tortious interference with its business; false advertising under the Lanham Act, 15 U.S.C. § 1125; publication of injurious falsehood; and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA); Missouri Computer Tampering Act, Mo. Rev. Stat. §§ 537.525 and 569.096-099 (MCTA); and civil conspiracy under Missouri State Law.

## PARTIES

14.    Plaintiff Fenix is a Missouri corporation with its principal place of business in St. Charles County, Missouri.  Fenix operates a telephone system and associated call center in Missouri.

15.    Defendant Agruss Law Firm, LLC ("Agruss") is a limited liability company and law firm located in Chicago, Illinois. It operates a publicly available website and is in the business of representing consumers nationwide in TCPA matters, including in this judicial district.  It falsely advertised Fenix's Missouri telephone number on its website, as well as perpetrated its tortious conduct, and damaged Fenix in this District.

16.     Defendant Icehook Systems, Inc. ("Icehook") is a Delaware corporation with its principal place of business in New York.  Upon information and belief, Icehook either operates, owns or is directly involved with BobRTC and its illegal activity against Fenix is directed to Missouri and injured Fenix in Missouri.

17.     Defendant John Doe 2, upon information and belief, is the owner, operator and/or parent company of the person or entity which owns the website BobRTC.tel.  BobRTC.tel provides the platform and tools, and directly solicits others, to mass dial companies it believes are illegally auto-dialing consumers; sort of a vigilante fight back against illegal auto-dialers.

18.     Defendant Discord, Inc. ("Discord") is a Delaware corporation with its principal place of business in San Francisco.  Discord operates its website discord.com and a mobile application, used throughout the world, including in Missouri.  Discord provides the message boards and tools the individual defendants use to coordinate their unlawful conduct, all with Discord's knowledge.

19.     Defendant Cameron Lobban ("Lobban") is an individual residing in Leeds, West Yorkshire, United Kingdom and, upon information and belief, is the owner and/or operator of the website scammer.info, another website the individual defendants use, including through message boards, to coordinate their unlawful conduct, all with Lobban and scammer.info's knowledge. A John Doe is also named for scamer.info since it is unclear who owns the website.

20.     Defendant Donald Marchant ("Marchant") is an individual residing in South Carolina.  His tortious and illegal activity on scammer.info (which was then picked up by BobRTC.tel from scammer.info) was directed at harming Fenix in Missouri by using and targeting Fenix's Missouri telephones.

21.     Defendant Ryker Gillespie ("Gillespie") is an individual residing in Arizona.  His tortious and illegal activity on BobRTC.tel was directed at harming Fenix in Missouri by using and targeting Fenix's Missouri telephones.

22.     Defendants John Does 3-50 are other entities and/or persons involved in the misconduct and violations herein but their identities are not yet known.

23.     Nominal Defendant Tucows, Inc. is a Canadian company with its principal place of business in Toronto, Canada. Tucows is being named because it hosts the website, BobRTC.tel, and, upon injunction, can be ordered to cease hosting the website.  Tucows does business throughout the U.S. and Missouri, and the individual and John Doe Defendants 3-50 used the offending hosted website to damage Fenix in Missouri, including by using and targeting Fenix's Missouri telephones.

## JURISDICTION AND VENUE

24.     This action arises under 15 U.S.C. § 1125, 18 U.S.C. § 1030 as well as the statutory and common law of the state of Missouri.

25.     In addition, this action is between Plaintiff, a Missouri company, and Defendants (and upon information and belief, for the LLC Defendants, all of their members), all of whom are not citizens of Missouri.  The amount in controversy exceeds $75,000.

26.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

27.     This Court has personal jurisdiction over Defendants.  Defendants purposefully called, advertised or otherwise flooded Fenix's Missouri-based telephone lines in, and directed their illegal conduct, toward the State of Missouri.  Further, Defendants' acts constitute the commission of a tort within the State of Missouri that impacts or affects residents of the State of Missouri.

28.     Venue is proper in this District under 28 U.S.C. § 1391 because, *inter alia*, on information and belief, Defendants have advertised, sold and/or marketed products and services to residents in this District, and/or have committed tortious acts within this District.  A substantial part of the events giving rise to these claims occurred and continues to occur in this District.

**FACTS COMMON TO ALL CLAIMS**

A.     **FENIX's Business**

29.     Fenix is a seller of VSCs meaning that it markets and sells service contracts to automobile owners for certain mechanical breakdowns.

30.     Fenix runs its VSC marketing and sales operations out of locations in Wentzville, Missouri and Addison, Texas. The majority of business is done from Missouri. Importantly, the vast majority of the staff who conduct business on behalf of Fenix are inside sales and customer support professionals who interact with customers and prospective customers entirely over the phone.  Indeed, all sales are placed when a customer dials a Fenix telephone number dedicated to sales calls and the Fenix internal system routes the call to an available sales professional.

31.     Fenix conducts marketing in connection with its VSC sales in only two ways. Primarily, Fenix mails advertisements directly to consumers, and then a lesser method used is its website at www.fenixprotect.com ("Fenix Website") where a consumer can request that Fenix provide him or her a quote.  Fenix does not autodial or robocall consumers as one of its marketing methods.

B.     **The Agruss Publication Identified Fenix as a Debt Collection Agency, Robocaller, and/or Debt Collector**

32.     Agruss is a law firm based out of Chicago, Illinois that specializes in representing plaintiffs on Telephone Consumer Protection Act (TCPA) cases, among other practices. Agruss

maintains a website at the URL www.AgrussLawFirm.com ("Agruss Website") which includes a number of pages advertising their law services and publishing blog entries, videos, guides, and newsletters on various legal topics.

33.     Sometime earlier in 2020, Agruss published an advertisement at the URL https://www.agrusslawfirm.com/collection_agencies/american-automotive-service-solutions/800-827-5528 that identified at least one telephone number which Agruss alleged was used in illegal autodialing campaigns ("Agruss Publication," a printout of which is attached hereto as **Exhibit A**).

34.     The Agruss Publication identified American Automotive Service Solutions, Fenix's formal corporate name ("American"), on a "Directory of Collection Agencies," an exhaustive list of alleged debt collection agencies searchable by telephone number and company name ("Directory").  A printout of the Directory is attached hereto as **Exhibit B**.

35.     The telephone number identified in the Agruss Publication is associated with Fenix's Wentzville, Missouri call center ("Fenix Telephone Number") and is used to route consumers to Fenix's sales and customer support professionals.

36.     Contrary to the allegations in the Agruss Publication, however, Fenix has never used the Fenix Telephone Number (or any other telephone number for that matter) to engage in outbound dial marketing or to robocall any consumers.

37.     In the banner of the Agruss Website landing page ("Banner"), the Agruss Publication prominently identified American, stating that American "may be calling from [the Fenix Telephone Number]," and provided consumers with the choice to "Submit A Complaint" or "Learn Your Rights."  *See* Ex. A.  Immediately below the Banner, the Agruss Publication included a "How it Works" section stating:

a. You Have Rights – **_Robocallers_** and debt collectors may be violating the law
b. **_We Stop the Calls_** - We will send a cease and desist request for free
c. You get money – Up to $1,000 for harassment, and $500-$1,500 **_for illegal robocalls_**
d. You don't pay a dime - The other side pays our fees and costs.   (*See id*. emphasis added).

38.     The "How it Works" Section was sandwiched between the Banner, and a section that provided the Fenix Telephone Number again and identified numerous other formats in which the Fenix Telephone Number may appear.  *Id*.

39.     The Agruss Publication directed consumers to call the law firm to complain about any robocalls that they had received.  Indeed, selecting the "Submit A Complaint" button (which is located below American's name and the Fenix Telephone Number) links to a fillable form that allowed consumers to provide personal and contact information and asked consumers to "tell us about your complaint."  *Id*.

40.     Similarly, selecting the "Learn About Your Rights" button linked the consumer to an interactive map that provided the consumer with a preview of information when he or she hovered the cursor over a state.  For example, "Missouri – You are protected under several federal laws below.  Scroll down to learn more about debt collection harassment, robocalls, unauthorized…"  *Id*.

41.     Thus, the Agruss Publication conveyed a simple (yet completely inaccurate) factual statement: American d/b/a Fenix is a "debt collection agency," "robocaller," "debt collector," and/or that it "harasses consumers with illegal robocalls."

42.     Similarly, the Agruss Publication also conveyed that the Fenix Telephone Number is used in connection with debt collection, autodialing, and/or harassing robocalls.

43.     A review of the Agruss Website reveals that it currently uses the same format and the same content for other entities listed on the Directory.  For example, the landing page for Fenix

Recovery Enterprises Inc. (unrelated to Plaintiff) uses the same format, and the same content as the Agruss Publication.  *See* the URL https://www.agrusslawfirm.com/ collection_agencies/fenix-recovery-enterprises-inc/320-679-0298, a printout of which is attached hereto as **Exhibit C**.

44.     Accordingly, upon information and belief, Agruss combs message boards and other various unvetted sources, and populates its Directory (either individually or using a computer program) without fact checking that the entities identified are, in fact, debt collection agencies or debt collectors, or that they employ auto-dialers.   Agruss then publishes numerous articles like the Agruss Publication on the Agruss Website without regard to their truth.

C.     **Discord and Scammer.info Further the Spreading of Misinformation that Fenix Auto-Dials Consumers**

45.     Scammer.info and Discord provide forums and message boards for users to discuss plans to launch mass dialing attacks on companies they believe are scamming consumers.

46.     The individual and John Doe 3-50 Defendants used these platforms to discuss Fenix and plan their coordinated unlawful attack on Fenix's telephone system.

47.     Once these defendants coordinated and planned their attack, they then headed over to the BobRTC.tel website to implement their illegal scheme.

D.     **BobRTC.tel Now Thinks Fenix is a Scamming Auto-Dialer and Solicits Others to Mass Dial Fenix**

48.     BobRTC.tel is a web-based platform that allows "scam baiters" to use Voice Over Internet Protocol (VOIP) to "fight telephone fraud" by dialing and locking up phone systems for individuals and entities that BobRTC.tel users unilaterally believe belong to telephone fraudsters. Upon information and belief, Icehook and John Doe No. 2 own and operate BobRTC.tel, and are responsible for the activities described herein.

49.     The BobRTC.tel platform includes a function that allows users to load phone numbers of alleged "scammer numbers" into a registry ("BobRTC.tel Phonebook") that users

and bots can then use to manually call from a spoofed telephone number, autodial, teleconference dial with other "scam baiters," and even record the call. Not only does BobRTC.tel provide a chat function through which users can discuss best practices for fooling telephone scammers, but BobRTC.tel has even turned the scam baiting into a game.

50.     Indeed, users can gain "experience points" (XP) through several methods including by uploading numbers for alleged telephone fraudsters or based on the number of entries that he or she dials on the BobRTC.tel Phonebook.  Users can then trade their XP for features like "call flooding" and voice bots that allow callers to mask their voice with a computer algorithm.  The BobRTC.tel platform also has a link to forums or threads on separate websites such as Scammer.info, and Discord.

51.     Soon after Agruss published the advertisements described immediately above, users started new discussions about the Fenix Telephone Number on the Scammer.info and Discord.com message boards and chatrooms.  The individual and John Doe 3-50 Defendants then posted the Fenix Telephone Number in the BobRTC.tel Phonebook as a result of these user discussions.

52.     Although the stated objective of scam baiting via BobRTC.tel is to keep telephone fraudsters from victimizing innocent consumers, the individual and John Doe 3-50 Defendants have coordinated mass TDoS attacks on Fenix's telephone systems, and have cost an innocent VSC company hundreds of thousands of dollars.

E.     **The Individual and John Doe Defendants 3-50 and the TDoS Attacks**

53.     Fenix and its representatives have been the victims of TDoS attacks organized by the individual and John Doe 3-50  Defendants.  These Defendants have inundated Fenix with thousands of calls made or otherwise engineered by these Defendants.

54.     The U.S. Department of Homeland Security ("DHS") defines a TDoS attack as one in which perpetrators launch a high volume of telephone calls against a target network, tying up the system from receiving legitimate calls. "The organization will be inundated with a continuous stream of calls from being completed." *See* "TDoS Attacks on Public Safety Communications, Situational Awareness Update," (dated March 16, 2013).  The DHS and other law enforcement agencies recognize TDoS attacks as criminal activity and encourage that victims report them to appropriate authorities.

55.     The John Doe Defendants mask their identities to perpetrate their scheme. They use BobRTC.tel to disguise their location and telephone numbers when placing calls. They use technology, including "autodialers," to rapidly place a high volume of calls. And they coordinate their activities using anonymous accounts on web forums operated by Defendants Discord and Scammer.info.

56.     These phone calls and attacks have no purpose other than to harass and otherwise interfere with Fenix's business.

57.     The callers, who are sometimes computer-controlled, and other times human, occupy Fenix's phone lines and employees for thousands of hours a month.

58.     These calls are not a prank. They are concerted, malicious and a criminal effort to cause harm to Fenix.

59.     As a result of the attacks, Fenix's telephone network and employees must answer and respond to a high volume of false calls.  Legitimate customers and potential customers are unable to reach company representatives.  This has resulted in lost sales and dissatisfied existing customers.

60.     Other times, the calls overwhelm Fenix's systems entirely so they cannot be operated, effectively shutting down Fenix's business.

F.     **The Attacks Are Coordinated Online**

61.     In online forums including Discord and Scammer.info, a group of John Doe Defendants working in concert and through agreement have used the communication forums and chatrooms to coordinate their attacks.

62.     In addition to the unlawful telephone hacking, and as described below, the web forums reveal the individual and John Doe 3-50 Defendants have made false and damaging statements about Fenix. The web forums also show the individual and John Doe 3-50 Defendants agreed to coordinate attacks on Fenix.  These defendants have been engaged in a long and coordinated pattern of abusive behavior towards Fenix through their use of the Discord and Scammer.info platforms, as well as other platforms.

63.     By way of example, on Discord, a number of individual and John Doe Defendants started a forum or chatroom identifying the Fenix Telephone Number as belonging to a telemarketing or telephone fraud company.

64.     The individual and John Doe Defendants connected the Fenix Telephone Number to Fenix itself, and the individual and John Doe Defendants in the Discord forums falsely and misleadingly labelled Fenix as a telephone scammer and an unscrupulous telemarketer that engages in autodialing, robocalling, and generally harassing consumers over the telephone.

65.     Scam baiters on Scammer.Info had almost identical discussions to those taking place on Discord.  Individual and John Doe 3-50 Defendants on Scammer.info forums and chatrooms also falsely identified Fenix as a telephone scammer and an autodialer.   The Individual and John Doe 3-50 Defendants using and through Discord and Scammer.Info agreed to punish Fenix for its purported crimes, and organized TDoS attacks on the Fenix Telephone

Number identified in the Agruss Publication using BobRTC.tel's platform. In other words, Discord and Scammer provided a back alley where individual and John Doe 3-50 Defendants congregated, agreed, and planned their illegal attacks on Fenix.

66.     Although these vigilante scam baiters falsely accused and singled out a company that is actually innocent of autodialing and robocalling consumers, they are unfortunately adept at carrying out disruptive TDoS attacks.  Indeed, the individual and John Doe 3-50 Defendants coordinated their TDoS attacks to coincide at the same moment and have completely shut down Fenix's Telephone System for days.  These synchronized and agreed upon acts to systematically prevent Fenix from receiving any calls from legitimate customers have cost Fenix hundreds of thousands of dollars in a short matter of time.

G.     **Nominal Defendant Tucows**

67.     Tucows hosts various websites, including BobRTC, Scammer.info and Discord.

68.     While Fenix has no information that this Defendant has done anything wrong, because Fenix seeks injunctive relief in this case, it is being named as a nominal Defendant so that when an injunction is issued to shut down the illegal activity, it will be under the jurisdiction of this Court.

69.     Tucows operates interactive websites where users can pay for hosting and other services online.

70.     Numerous sales of its services have been made in this District.

**<u>COUNT ONE</u>**
**False Advertising**
**(Lanham Act Section 15 U.S.C. § 1125)**
**(Against Agruss)**

71.     Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

72.     Agruss disseminated advertising materials which are untrue and/or misleading, and falsely describe Fenix's operations.  These acts violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  *See* **Ex. A**.

73.     Agruss marketed and distributed the Agruss Publication on the Internet, conveying the explicit factual message that Fenix is a "collection agency," a "robocaller," "debt collector," and/or that it "harasses consumers" using "illegal robocalls."

74.     The Agruss Publication also conveyed that the Fenix Telephone Number is used by a "collection agency," a "robocaller," and/or a "debt collector."  *Id*.

75.     Fenix is not a collection agency or debt collector.  Moreover, Fenix has never engaged in any auto-dialing marketing.  It markets by mail.  As such, Agruss's statements are literally false, or, literally false by necessary implication.

76.     Alternatively, the Agruss Publication is ambiguous, and it implicitly conveys a false impression, is misleading in context, and has deceived or is likely to deceive consumers.  In publishing the Fenix Telephone Number alongside extensive use of the words "robocall," "debt collector," and "harassment," and suggesting that consumers "Submit A Complaint" or "Learn Their Rights" (about robocalls and debt collection), Agruss suggests to potential clients that Fenix scam auto-dials consumers and that any calls that a consumer receives from the Fenix Telephone Number is a robocall, and/or a call from a collection agency or debt collector.

77.     There is no other perception one could draw from the Agruss Publication than to think Fenix is outbound dialing customers, either as an illegal robodialer or as a debt collector, both of which are untrue. Why else would Agruss publish the Fenix Telephone Number in conjunction with its request to "Submit A Complaint"?  The Fenix Telephone Number would only be a concern to a consumer if it received a call from Fenix.

78.     Consequently, the Agruss Publication contains false statements of fact about the Fenix Telephone Number that misrepresent the nature, characteristics and qualities of Fenix's services and how it markets those services.

79.     Because of Agruss's false statements, consumers will easily be deceived into thinking that Fenix is an unscrupulous company that autodials consumers or a malefactor that robocalls consumers with the intention of defrauding consumers.

80.     Fenix is harmed by Agruss's false statements because they have deceived or will deceive consumers about the nature, characteristics and qualities of Fenix's services and will prompt consumers into avoiding business with Fenix.  Moreover, while the Agruss Publication is not the first to publish false statements about Fenix, due to the timing of the false statements in the Agruss Publication, it is reasonable to think they may have contributed to the motivation that prompted Marchant, Gillespie, and John Does 3-50 to coordinate attacks on Fenix's telephone system.

81.     On information and belief, Agruss's acts complained of herein have been committed with reckless disregard for the truth about Fenix's business, and that reckless disregard led to confusion, and mistake, or to deceive the public.

82.     The Agruss Publication, and any new or future publications by Agruss about Fenix or the Fenix Telephone Number, likely will continue to deceive consumers, as well as the individual and John Doe 3-50 Defendants.  Unless enjoined, the Agruss Publication will cause irreparable harm to Fenix for which Fenix has no adequate remedy at law.

83.     As a direct and proximate result of Agruss's conduct, Fenix is entitled to a permanent injunction enjoining and restraining Agruss and their respective agents and assigns from engaging in the above-mentioned acts.

84.     Fenix also is entitled to recover from Agruss under the Lanham Act all costs and reasonable attorneys' fees incurred since Agruss did not conduct sufficient due diligence about Fenix before publishing the false statements.

**COUNT TWO**
**Publication of Injurious Falsehoods**
**(Against Agruss)**
**(Missouri Common Law)**

85.     Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

86.     As detailed in the foregoing paragraphs, the Agruss Publication stated that Fenix is an auto-dialer, and that it is an unscrupulous debt collector that harasses consumers using impermissible robocalls.

87.     As specifically described in Count One above, the statements contained in the Agruss Publication are false, and Agruss published them with reckless disregard for their truth or falsity.

88.     For the reasons described above, the statements in the Agruss Publication have resulted in harm to Fenix's pecuniary interests, and Agruss recognized or should have recognized that the Agruss Publication would have the effects illustrated in the foregoing allegations.

89.     As a direct and proximate result of Agruss's conduct, Fenix is entitled to a permanent injunction enjoining and restraining Agruss and their respective agents and assigns from engaging in the above-mentioned acts, and an award of punitive damages as a result of its failure to conduct sufficient due diligence about Fenix before publishing the false statements.

## COUNT THREE
### Violation of the Computer Fraud and Abuse Act
### (Against All Defendants Except Agruss)
### (18 U.S.C. § 1030)

90.     Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

91.     Fenix's telephone system and its phone call routing configuration are based on computers ("Fenix Computer System"), which are involved in interstate commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

92.     Marchant, Gillespie and John Does 3-50 knowingly and intentionally accessed the Fenix Computer System without authorization and/or in excess of any actual or implied authorization when they coordinated and engaged in a massive TDoS attack autodialing and locking up the Fenix Telephone Number for hours on end.

93.     These Defendants all perpetrated their unlawful actions with the help, assistance and knowledge of Icehook and all others owning or operating BobRTC.tel.

94.     These Defendants all perpetrated their unlawful actions with the help, assistance and knowledge of Discord and Scammer.info.

95.     Defendants (excepting Agruss) knowingly, willfully, and with an intent to defraud, accessed the Fenix Computer System without authorization and in excess of authorization. These Defendants took these actions for their own benefit and to the detriment of Fenix.

96.     Defendants have caused a loss to Fenix far in excess of $5,000.00 during a twelve-month period.

97.     Defendants have damaged Fenix in that the TDoS attacks have prevented an indeterminate number of potential consumers from reaching Fenix's sales associates to purchase

VSCs, have caused existing customers to cancel their policies with Fenix because they could not

get through the TDoS to ask Fenix representatives questions, and have forced Fenix to expend

additional amounts in IT resources to try and stop the unauthorized access and abuse of the Fenix

Computer System.  Fenix seeks compensatory and other equitable relief under 18 U.S.C. § 1030

(g) in an amount to be proven at trial.

98.     Fenix has suffered significant and irreparable and not fully calculable harm and

injuries resulting from the conduct, which harm will continue unless this Court puts a stop to the

TDoS attacks and properly enjoins Defendants from further use of the BobRTC.tel platform to

attack the Fenix Computer System.  Fenix has no complete remedy at law.

**COUNT FOUR**
**Trespass to Chattels**
**(All Defendants Except Agruss)**
**(Missouri Common Law)**

99.     Fenix restates the preceding paragraphs by reference as if fully incorporated

herein.

100.     During all material times alleged herein, the Fenix Computer System included

goods or personal chattel belonging to Fenix.

101.     Fenix did not authorize anyone to assist with or in any way perform the TDoS

attacks.

102.     Defendants Marchant, Gillespie and John Does 3-50 intentionally coordinated the

TDoS attacks on the Fenix Computer System through various posts on Scammer.Info and

Discord.

103.     Discord and Scammer.info knew their platforms were being used to plan such

attacks.

104.    The TDoS attacks have completely prevented Fenix from using the Fenix Telephone Number, and totally interfered with Fenix's use of the Fenix Computer System.

105.    All Defendants, except the nominal Defendant Tucows, helped perpetrate a trespass, and Marchant, Gillespie and John Does 3-50 actually trespassed, against Fenix's chattels (i.e. the Fenix Computer System) when they unlawfully prevented any current or prospective customers from contacting Fenix in connection with the TDoS attacks.

106.    As a direct and proximate result of the Defendants' TDoS attacks, Fenix has been damaged.

107.    The actions complained of herein were conscious, intentional, willful, wanton and malicious, entitling Fenix to an award of punitive damages.

108.    Fenix has no adequate remedy at law for the continued trespass to chattels.

109.    Fenix is entitled to relief for the violations of Missouri common law regarding trespass to chattels.

110.    Fenix seeks to recover its attorneys' fees in connection with preliminary and permanent injunctions required to obtain cessation of such unlawful actions, and actual damages suffered as a result of Defendants' conduct.

**COUNT FIVE**
**Tortious Interference with Business Expectancy**
**(All Defendants Except Agruss)**
**(Missouri Common Law)**

111.    Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

112.    Fenix has existing customer contracts and/or valid business relationships with its customers (e.g., VSCs), and regularly has business expectancies for existing customers as well as prospective customers that call Fenix.

113.    Defendants all knew of Fenix's customer contracts or valid business relationships with its customers and its business expectancies for existing customers as well as prospective customers that call Fenix.

114.    Defendants intentionally interfered with Fenix's customer contracts, valid business relationships with customers and/or expectancies in a manner which induced breaches of said contracts, caused customers to cancel their VSCs with Fenix, and prevented prospective customers from making contractual purchases from Fenix.

115.    Defendants' intentional interference with Fenix's customer contracts, valid business relationships with customers and/or expectancies was unjustified and/or was done in a manner that employed improper means.

116.    Defendants' tortious interference with Fenix's contracts, valid business relationships with customers and/or expectancies has caused Fenix to suffer damages in an amount to be determined at trial.

117.    Defendants' conduct was willful and malicious and performed with malicious motive and with a reckless indifference to the rights of others entitling Fenix to punitive damages.

### COUNT SIX
#### Violation of the Missouri Computer Tampering Act
#### (All Defendants Except Agruss)
#### (Mo. Rev. Stat. § 569.095)

118.    Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

119.    Mo. Rev. Stat. § 537.525 permits a Plaintiff to recover compensatory damages against any person who violates Missouri Revised Statutes §§ 569.095 to 569.099.

120.    Missouri Revised Statute § 569.095 states:

> A person commits the crime of tampering with computer data if he knowingly and without authorization  or without reasonable grounds to believe that he has such authorization: modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network…

121.    On a daily, hourly, minute-by-minute, and second-by-second basis, all Defendants (excepting Agruss), knowingly and without authorization or without reasonable grounds to believe that they had authorization, provided the platform and means, and Defendants Gillespie, Marchant and John Does 3-50 in fact engaged in the conduct to, destroy data, programs, and/or supporting documentation on the Fenix Computer System when they completely prevented access to the Fenix Telephone Number in violation of Mo. Rev. Stat. § 569.095(3).

122.    In addition to any other damages and relief available to it, Fenix is entitled to recover its reasonable attorney's fees incurred herein from Defendants.

123.    Fenix has been injured and damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to prevent further TDoS attacks on the Fenix Computer System.

## COUNT SEVEN
### Civil Conspiracy
### (All Defendants Except Agruss)
### (Missouri Common Law)

124.    Fenix restates the preceding paragraphs by reference as if fully incorporated herein.

125.    Defendants (excepting Agruss) conspired and agreed with one another, including through the use of message boards and other online forums they employed to communicate with one another, to unlawfully: (a) access the Fenix Computer System without authority; (b) prevent prospective customers from contacting Fenix's sales professionals and purchasing new VSCs; (c)

prevent current customers from contacting Fenix's sales and customer support professionals to ask questions; and (d) tortiously interfere with Fenix's contracts and/or business expectancies.

126.    The conspiring Defendants committed numerous overt acts in furtherance of their agreement and conspiracy including, but not limited to loading the Fenix Telephone Number into the BobRTC.tel program and identifying Fenix as a "scammer" or telemarketer; drafting and publishing posts on Scammer.info and Discord coordinating the TDoS attacks; and actually carrying out the TDoS attack using the BobRTC.tel platform.

127.    As a direct result of the foregoing conduct, the conspiring Defendants have caused and continue to cause damages to Fenix, including but not limited to attorneys' fees and costs Fenix is expending and will expended in the future to enforce its legal rights.

128.    The conspiring Defendants' conduct was willful and malicious and performed with malicious motive and with a reckless indifference to the rights of others entitling Fenix to punitive damages.

## CONCLUSION

WHEREFORE, Fenix prays the Court enter judgment in its favor and award it relief as follows:

1.    That the Court permanently restrain and enjoin Defendants and their agents from any and all further posting or disseminating of the Fenix Telephone Number, uploading the phone number into BobRTC.tel or similar systems and from engaging in any dialing of the Fenix Telephone Number;

2.    That the Court require Defendants to remove all postings or advertisements of the Fenix Telephone Number;

3.      That the Court permanently restrain and enjoin Defendants and their agents from

any other act likely to induce others to dial Fenix who is not a legitimate

customer;

4.      That Fenix be awarded all actual, punitive, exemplary, and other damages

incurred as a direct and proximate cause of Defendants' unlawful conduct;

5.      That Defendants pay Fenix's reasonable attorneys' fees, based on their willful and

deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a);

6.      That the Court grant Fenix such other and further relief as the Court may deem

just and proper.

## JURY DEMAND

Fenix hereby demands a jury trial on all issues so triable.

Dated:  September 8, 2020                 Respectfully Submitted,


By:  *s/Jeffrey H. Kass*
     Jeffrey H. Kass
     LEWIS BRISBOIS BISGAARD & SMITH LLP
     1700 Lincoln Street, Suite 4000
     Denver, Colorado 80203
     Tel.:   303-861-7760
     Fax:    303-861-7767
     Jeffrey.Kass@lewisbrisbois.com

     *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on this 8th day of September, 2020, the foregoing **FIRST AMENDED COMPLAINT** was filed electronically with the Court using the CM/ECF system, which action caused automatic electronic notice of such filing to be served upon the following:

Mark D. Molner
MOLNER LAW FIRM LLC
300 E. 39th St.
Suite 1G
Kansas City, MO 64111
816-281-8549
Fax: 816-817-1473
Email: mark@molnerlaw.com
*Attorney for Agruss Law Firm, LLC*

I further certify that Plaintiff will serve the **FIRST AMENDED COMPLAINT** by summons on all Defendants not yet served or who have not yet entered into the case.

*s/Jeffrey H. Kass*